UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TASHANNA ORTIZ,

                Plaintiff,

      -against-                                **ORDER**
                                                           21-cv-3766-SJB
BK VENTURE GROUP LTD. d/b/a STARLETS NYC and
KEVIN BURCH,

                Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

       Plaintiff Tashanna Ortiz ("Ortiz" or "Plaintiff") filed this action against BK Venture Group Ltd. d/b/a Starlets NYC ("Starlets") and Kevin Burch ("Burch," and collectively, "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL").  (Compl. dated July 5, 2021 ("Compl."), Dkt No. 1).  Ortiz now seeks partial summary judgment on her claims for violations of the Wage Theft Protection Act, failure to pay minimum wage and untimely payments under FLSA and NYLL, and attorney's fees and costs.  For the reasons described below, the Court grants the motion in part.

STANDARD FOR SUMMARY JUDGMENT

       A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary

judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument*. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered

3

paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—as undisputed unless otherwise noted.

Burch is the owner of Starlets NYC, which had more than $500,000 in annual revenue in the years at issue. (Pl.'s 56.1 Stmt. in Supp. of Mot. for Summ. J. ("Pl. 56.1 Stmt."), Dkt. No. 19-1 ¶¶ 1, 6; Defs.' Resp. to Pl.'s 56.1 Stmt. ("Defs. 56.1 Stmt."), Dkt. No. 20-2 ¶¶ 1, 6). During the time Ortiz worked there, Starlets employed more than 11 employees. (Pl. 56.1 Stmt. ¶ 18).[1] Burch was present at Starlets between five and seven days per week when Ortiz worked at the establishment, (*id.* ¶ 2; Defs. 56.1 Stmt. ¶ 2),

---

[1] Where a citation only to one side's 56.1 statement is provided, the Court has concluded that the opposing party has failed to demonstrate, by citation to admissible evidence, an actual material fact in dispute.

4

and he had the authority to hire and fire employees, assign work, and determine wages. (*Id.* ¶¶ 3–5; Pl. 56.1 Stmt. ¶¶ 3–5). Ortiz worked as a bartender at Starlets from 2016 through 2019. (*Id.* ¶¶ 17, 35).

The duties of a bartender at Scarlets are disputed by the parties. Ortiz claims that at least 25% of her time consisted of carrying bottles with ice buckets and plastic cups to customers and to the club's VIP section, mixing and pouring drinks, serving drinks to the owner and his friends in the basement, and carrying a box of cash downstairs. (*Id.* ¶ 62; Decl. of Tashanna Ortiz ("Ortiz Decl."), attached as Ex. 10 to Decl. of Raymond Nardo ("Nardo Decl."), Dkt No. 19-12 ¶¶ 2–6). She claims that Startlets did not want the bartenders to sit down during their shifts. (*Id.* ¶ 3). Defendants allege that these duties were performed by other employees, namely busboys, waitresses, and barbacks. (Defs. 56.1 Stmt. ¶ 62). According to Defendants, bartenders were only responsible for making and selling drinks, while stationed at a register behind the bar, and were not required to do any physical tasks. (Decl. of Kevin Burch ("Burch Decl."), Dkt. No. 20-1 ¶¶ 6–7). Bartenders did not stock the bar or retrieve bottles of alcohol, did not carry buckets of ice, and did not bring drinks to the owner. (*Id.* ¶ 7).

Ortiz was not given a Notice and Acknowledgement of Pay Rate and Payday ("Section 195(1) Notice") in 2016, 2017, or 2018. (Pl. 56.1 Stmt. ¶ 38). She did receive a Section 195(1) Notice in June 2019, several years after she started working. (*Id.* ¶ 36). Burch believed he paid bartenders the tip credited minimum wage between 2017 and 2019. (*Id.* ¶ 27; Defs. 56.1 Stmt. ¶ 27). Ortiz was not paid weekly, (*Id.* ¶ 41; Pl. 56.1 Stmt. ¶ 41); instead, her pay stubs reflect that she was paid at least a month after the work she performed. (*Id.* ¶ 40; Defs. 56.1 Stmt. ¶ 40). Five of the pay stubs provided by Ortiz do not list the basic minimum hourly wage, and two of the pay stubs list the

incorrect regular rate of pay.  (Pay Stubs ("Pay Stubs"), attached as Ex. 6 to Nardo Decl., Dkt. No. 19-8; Pl. 56.1 Stmt. ¶ 48; Defs. 56.1 Stmt. ¶ 48).

Ortiz filed this lawsuit alleging violations of FLSA and the NYLL on July 5, 2021.  (Compl.).  On March 22, 2023, Ortiz filed this motion for partial summary judgment.  (Mot. for Summ. J., Dkt. No. 19).  Ortiz seeks summary judgment on her claims for: (1) violations of the Wage Theft Prevention Act; (2) unpaid minimum wages under FLSA and NYLL; (3) untimely payments under FLSA and NYLL; and (4) attorney's fees and costs.  (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl. Mem. of Law"), Dkt. 19-14 at 1).  She did not move for summary judgment on her unlawful wage deductions claim.  (*See* Compl. ¶¶ 56–60).

## DISCUSSION

### I.   Wage Theft Prevention Act Claims

Ortiz argues that she is entitled to summary judgment on her Wage Theft Prevention Act ("WTPA") claims because Defendants failed to provide her with a wage notice within 10 days of employment in violation of NYLL § 195(1)(a), and because Defendants provided Ortiz defective wage statements in violation of NYLL § 195(3).  (Pl. Mem. of Law at 3–4).  Defendants did not oppose Ortiz's arguments on these claims in their summary judgment briefs.  (*See generally* Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. ("Defs. Mem. of Law"), Dkt. No. 20-4).

The Court finds that any defense to these claims has been abandoned.  *See Jackson v. Federal Exp.*, 766 F.3d 189, 194–96 (2d. Cir. 2014).  The Court's independent review of the record, including the Rule 56.1 statements, indicates that summary judgment is appropriate on these claims.  *Id.* at 194 ("Rule 56 does not allow district

6

courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed.").

New York's Wage Theft Prevention Act requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at \*29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)); *see also* NYLL § 195(1)(a).  The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee."  NYLL § 195(1)(a).  The WTPA also requires that employers provide employees wage statements "with every payment of wages," which must contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. *Id.* § 195(3).

*First*, the Court concludes that Ortiz has established liability under Section 195(a)(1) because Defendants failed to provide Ortiz a written wage notice within 10 days of her first day of employment.  Defendants claim that they provided the Section 195(1) Notice at the time of her hiring, citing the only Section 195(1) Notice produced. (Defs. 56.1 Stmt. ¶ 37).  However, that notice is dated June 27, 2019, and it is undisputed that Ortiz began working at Starlet's in 2016. (Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State

7

Labor Law ("Section 195(1) Notice"), attached as Ex. 5 to Nardo Decl., Dkt. No. 19-7; Pl. 56.1 Stmt. ¶ 35). Accordingly, as there is no genuine dispute as to whether Defendants provided Ortiz with a wage notice within 10 days of her employment—the only evidence in the form of Ortiz's unrebutted statement that she did not receive such a statement, (*id.* ¶ 35)—the Court grants summary judgment as to the notice claim.

*Second*, Ortiz claims Defendants violated Section 195(3) by issuing wage statements that "did not list the basic minimum hourly wage, did not list the proper amount of the tip credit (except for one paystub), and listed the wrong tip credited rate of pay in 2019." (Pl. Mem. of Law at 4). Each pay stub provided violates the WTPA. Five statements do not list the rate of regular pay. (Pay Stubs at 1–4, 7). Two list the regular rate of pay as $7.50 in 2017, (*id.* at 5–6), when the basic minimum hourly rate was $11.00 for employers with 11 employees or more. *See History of Minimum Wage in New York State*, N.Y. Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited Mar. 27, 2024). Because the wage statements do not include the information required by Section 195(3), the Court finds each wage statement is defective and grants summary judgment on this claim. *See Orellana v. One if By Land Rest. LLC*, No. 18-CV-7865, 2020 WL 5768433, at *13 (S.D.N.Y. Sept. 27, 2020) (finding wage statements did not comply with WTPA requirements where the statements "d[id] not include a rate for the earnings category labelled 'regular'").

An employer who fails to provide a Section 195(1) Notice within ten business days of the employee's first day of employment is liable for statutory damages of $50 for each work day, up to $5,000. NYLL § 198(1-b). And if an employee is not provided wage statements in compliance with NYLL § 195(3), an employee may recover $250 for each work day that the violations occurred, up to $5,000. *Id.* § 198(1-d). The pay stubs

provided by Ortiz show a work period of 103 days. (*See* Pay Stubs). Accordingly, the Court finds she is entitled to $5,000 in statutory damages for violations of Section 195(1), and $5,000 for violations of Section 195(3) for failure to provide wage statements.

> II. <u>Minimum Wage Under FLSA and NYLL</u>

Ortiz argues that Defendants paid her a wage lower than the permissible minimum wage without giving her proper notice that Defendant was taking a tip credit allowance. (Pl. Mem. of Law at 10). She claims that she should recover $3,685 in unpaid wages and $3,685 in liquidated damages. (*Id.* at 11). The Court finds it inappropriate to grant summary judgment.

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239–40 (2d. Cir. 2011). "Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit." *Inclan*, 95 F. Supp. 3d at 497 (collecting cases); *see* 29 U.S.C. § 203(m)(2)(A) (tip credit wage does not apply "unless such employee has been informed by the employer of the provisions of this subsection"). "The notice provision is 'strictly construed' and 'requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit.'" *Galvez v. 800 Ginza Sushi Inc.*, No. 19-CV-8549, 2022 WL 748286, at *9 (S.D.N.Y. Mar. 11, 2022) (quoting *Inclan*, 95 F. Supp. 3d at 497). Though FLSA "does not require that the notice

9

be given in writing," *Hernandez*, 2016 WL 3248493, at *23, the employer bears the burden of showing it "informed employees that tips are being credited against their wages." *Id.* (quoting *Inclan*, 95 F. Supp. 3d at 497).

"The NYLL allows an employer to take a tip credit for tipped employees, subject to certain conditions similar to those under the FLSA." *See id.* at *25. An employer may take a tip credit "if a service employee or food service worker received enough tips and if the employee has been notified of the tip credit as required in section 146-2.2." *Id.* (quoting N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 146-1.3). "Notice of the tip credit under the NYLL . . . must be written: 'Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.'" *Id.* (quoting N.Y.C.R.R. tit. 12, § 146-2.2(a)). In addition to giving the notice in writing, an employer must obtain an "acknowledgement of receipt of such notices, signed by the employee," and the signed acknowledgements must be kept for six years. *Id.* (citing N.Y.C.R.R. tit. 12, § 146-2.2(a), (c)). If an employer fails to adhere to the notice requirements, it "may not utilize the tip credit to satisfy its minimum wage and overtime obligations." *Id.* The employer bears the burden of showing that they have complied with tip notice requirements; if the employer does not demonstrate compliance, it "is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).

Defendants did not address Ortiz's claims for unpaid minimum wages in their opposition brief and did not provide any evidence that they had complied with the FLSA's or the NYLL's tip credit notice requirements, issues on which Defendants bear

10

the burden of proof. *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 211 (E.D.N.Y. 2021) ("The employer bears the burden [under the FLSA] of showing that it satisfied the notice requirement by, for example, providing employees with a copy of the statutory provision and informing them that their tips will be used as a credit against the minimum wage as permitted by law." (quotations and alteration omitted)). In the Complaint and in her memorandum of law, Ortiz argues that Defendants failed to issue a tip credit notice. (Compl. ¶ 23; Pl. Mem. of Law at 10). Because Defendants bear the burden of proof on this issue, Ortiz may prevail—and thereby preclude Defendants from asserting notice was provided at trial—by simply pointing out the absence of evidence in the record, and without coming forward with evidence of her own. *See, e.g.*, *Inclan*, 95 F. Supp. 3d at 498 ("Because the employer has the ultimate burden to prove compliance with the tip credit notice requirement, . . . . the employer must adduce definite competent evidence showing that waiters were informed of the tip credit. As defendants here have not done so, the Restaurant is liable under the FLSA for plaintiffs' unpaid minimum wages without a tip credit allowance." (quotations and citation omitted)). "When the moving party has pointed to the absence of evidence to support an essential element on which the party opposing summary judgment has the burden of proof, the opposing party, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994) (citing *inter alia Celotex*, 477 U.S. at 322–23); *see* Fed. R. Civ. P. 56(c)(1).

Though Defendants cannot assert tip notice at trial, summary judgment still must be denied because Ortiz failed to put forth evidence establishing the amount of wages

11

due. The only evidence that includes hours worked and wages paid are the seven pay stubs provided by Ortiz. The pay stubs represent 96 hours worked, but Ortiz is requesting damages for 901 hours worked. (*See* Pay Stubs; Pl. Mem. of Law at 11). She provides no additional evidence for the other 805 hours worked. Because the Court does not have evidence as to when these hours were worked and how much she was paid for these hours, the Court denies summary judgment on this claim.[2]

Without providing evidence, Ortiz claims she is entitled to $3,685 for the entirety of the period she worked. (Pl. Mem. of Law at 11). She arrives at this calculation ostensibly based upon the following formula: she "divid[es] the total amount of wages paid according to [Ortiz]'s W-2's (excluding tips) by the applicable tip-credited minimum wage for each year (and round[s])." (*Id.* at 10). It appears that she wants to divide the wages (excluding tips) listed on her W-2 by the tip credit minimum wage to determine her hours worked, multiply the hours worked by the minimum wage, and subtract the amount she earned from the amount owed under the minimum wage. This method is unreliable and leads to inaccurate results in her case. The pay stubs show that Defendants did not consistently pay the correct tip credit wage each year, (*see* Pay Stubs), so dividing yearly wages by the tip credit wage for said year would not necessarily provide an accurate calculation of the hours Ortiz worked. In addition, the W-2s themselves do not provide the number of hours worked per year, meaning any extrapolation from the calculation derived from the pay stubs themselves—itself a flawed calculation—is impossible to perform. (W-2 Statements, attached as Ex. 8 to

---

[2] Because the Court denies summary judgment as to the unpaid minimum wage claims and did not award any damages, Ortiz's request for liquidated damages equal to 100% of the actual damages is denied as well.

Nardo Decl., Dkt. No. 19-6). Accordingly, the Court cannot determine, based on the W-2s, the wages owed to Ortiz, and this requires denial of summary judgment on this claim.[3]

### III. Untimely Payments Under FLSA and NYLL § 191(1)(a)(i)

#### A. Untimely Payments Under FLSA

"The FLSA does not explicitly prescribe a payment schedule, but 'it is clear that the FLSA requires wages to be paid in a timely fashion.'" *Lipstein v. 20X Hosp. LLC*, No. 22-CV-4812, 2023 WL 6124048, at *12 (S.D.N.Y. Sept. 19, 2023) (quoting *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998)).

Ortiz argues that Defendants violated FLSA by failing to pay her in a timely manner and requests $7,336.50 in liquidated damages, which she claims is equal to the total amount of wages (excluding tips) for which Defendants failed to pay her in a timely manner. (Pl. Mem. of Law at 6–7). The amount requested reflects 901 hours of work. (*See id.* at 11). Ortiz provided seven pay stubs that were each paid a month or more late, representing 96 hours of work. (*See* Pay Stubs). Ortiz is asking the Court to impute that all her paychecks were late from the seven pay stubs provided. Without evidence showing that the paychecks for the other 805 hours were also untimely, the Court must deny summary judgment on this claim.[4]

---

[3] Nor is there sufficient evidence and detail in Ortiz's declaration. (*See* Ortiz Decl.).

[4] Though the Court denies summary judgment on this claim for failure to provide enough evidence, it also notes that Defendants' arguments are without merit. Defendants argue that FLSA does not prescribe a particular payment schedule and that the timeliness of payments may depend on whether a plaintiff is proceeding *pro se* and whether a plaintiff "exhibits more of a need for the minimum wage they were to earn." (Defs. Mem. of Law at 5). Defendants further argue that here, the minimum wage is "an afterthought for the bartenders due to the large sum of cash they collect as tips," and

B. Untimely Payments Under NYLL § 190(4)

Ortiz also moves for summary judgment on her claim that she was entitled to be paid each week because she is a "manual worker" under NYLL § 190(4). (Pl. Mem. of Law at 8–9). A manual worker is defined as "a mechanic, workingman or laborer," NYLL § 190(4), and "[t]he Department of Labor interprets this provision to include 'employees who spend more than 25 percent of their working time performing physical labor.'" *Rankine v. Levi Strauss & Co.*, No. 22-CV-3362, 2023 U.S. Dist. LEXIS 89064, at *16 (S.D.N.Y. May 22, 2023) (quoting N.Y. Dep't of Lab. Op. Letter, No. RO-09-0066 (May 21, 2009)). Under NYLL § 191(1)(a)(i), "[a] manual worker shall be paid weekly."

The Court denies summary judgment on this claim because there are genuine issues of material fact as to Ortiz's duties and whether she qualifies as a manual laborer. Ortiz claims that her duties included carrying bottles with ice buckets and plastic cups to customers and to the VIP section, mixing and pouring drinks, serving drinks to the owner and his friends in the basement, and carrying a box of cash downstairs. (Pl. 56.1 Stmt. ¶ 62; Ortiz Decl. ¶¶ 2–6). She claims that Startlets did not want the bartenders to sit down during their shifts. (*Id.* ¶ 3). Defendants dispute that these duties were assigned to bartenders and claim that other employees, such as busboys, waitresses, and barbacks, performed them. (Def. 56.1 Stmt. ¶ 62). According to Defendants, bartenders are stationed at a register behind the bar and are only responsible for making and selling drinks. (Burch Decl. ¶ 6). Defendants deny that bartenders perform physical

---

therefore asks the Court to find a "longer payment schedule is not unreasonable." (*Id.*). Defendants offer no legal basis for this argument that the Court should determine what is timely based on the financial need of a plaintiff. And while it is true that FLSA does not set out a prescribed payment schedule, courts have found that two weeks is an unreasonable time to delay a paycheck. *See Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018).

tasks; they do not stock the bar or retrieve bottles of alcohol, do not carry buckets of ice, and do not bring drinks to the owner. (*Id.* ¶ 7). These genuine disputes of material fact make summary judgment inappropriate on a claim premised on Ortiz's status as a manual worker. *See*, *e.g.*, *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 96–100 (E.D.N.Y. 2020) (finding summary judgment inappropriate on overtime claims where there were material facts in dispute as to plaintiff's primary job duties).

IV. Attorney's Fees

Ortiz moves for summary judgment on attorney's fees, requesting $26,703.50 in fees and costs. (Pl. Mem. of Law at 13–14). It is premature to seek attorney's fees in this case since the motion filed only sought partial resolution and multiple claims must now proceed to trial. *Dardashtian v. Gitman*, No. 17-CV-4327, 2021 WL 746133, at *27 (S.D.N.Y. Feb. 16, 2021) ("[A] determination of the extent to which Plaintiffs should be granted attorney's fees is premature as the instant motion is only for partial summary judgment. To what extent attorney's fees should be awarded should await a comprehensive judgment."), *report and recommendation adopted*, 2021 WL 119811, at *1–*2 (Mar. 30, 2021). Any application for attorney's fees can be renewed following the close of trial.

CONCLUSION

For the reasons stated, Plaintiff Ortiz's motion for partial summary judgement is granted in part and denied in part. The Court finds that Ortiz is entitled to: $5,000 for Defendants' violation of NYLL § 195(1), and $5,000 for Defendants' violation of NYLL § 195(3). The Court denies summary judgment as to the rest of Ortiz's claims; however, at trial, Defendants may not defend against any failure to pay a minimum wage by asserting that Plaintiff received tip credits.

15

This case is referred to the EDNY Mediation Panel, and mediation shall be completed by **5/27/2024**. The parties shall select a mediator by **4/10/2024**. For assistance with any questions about the mediation process or the selection of a mediator, counsel are invited to contact the EDNY ADR Administrator at (718) 613-2578.

The parties are directed to file a joint pretrial order consistent with the Individual Practices of Magistrate Judge Bulsara by **6/25/2024**.

                                              SO ORDERED.

                                              */s/Sanket J. Bulsara*   March 27, 2024
                                              SANKET J. BULSARA
                                              United States Magistrate Judge

Brooklyn, New York